**GAULDEN v. SOUTHERN PAC. CO. et al.**

**No. 27065.**

District Court, N. D. California, S. D.

June 29, 1948.

Ryan & Ryan, of San Francisco, Cal., for plaintiff.

A. B. Dunne and Dunne & Dunne, all of San Francisco, Cal., for defendants Southern Pac. Co., and Pacific Fruit Exp. Co.

GOODMAN, District Judge.

This case involves the right of plaintiff, an employee of Pacific Fruit Express Company, a corporation engaged in railroad refrigeration service, to maintain an action for damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., against the Pacific Fruit Express Company and the Southern Pacific Company, a railroad common carrier.

The parties have stipulated that upon the pleadings and stipulation of facts submitted at pre-trial conference, the Court shall determine whether plaintiff, at the time of the accident and injury complained of, was an employee of a common carrier by railroad within the meaning of the Federal Employers' Liability Act. The parties have also agreed that if the court resolves the question in favor of plaintiff, the cause may be set for trial; otherwise appropriate judgment disposing of the cause may be entered, in which event exception may be reserved to the plaintiff.

### The Facts.

At the time of the accident described in the complaint, plaintiff was employed as an ice man in the icing yard and plant owned and operated by the Pacific Fruit Express Company at Bakersfield, California. He and fellow employees were engaged in un-

loading ice from a refrigeration car belonging to the Express Company. While plaintiff was aiding in moving an empty car from a loading platform, the wheels of a loaded car, which was being drawn up to the platform by a cable and winch, struck and injured him.

Pacific Fruit Express Company is a corporation which was organized in 1906 and commenced operations October 1, 1907. Its business is the hiring to common carriers by rail, of cars (known as "reefers") specially designed to transport perishable commodities, and providing such cars,—and similar cars of other companies when presented to it by a common carrier by rail,—with heater and refrigeration service to protect their contents against temperature changes and excesses. It also repairs, in its shops, the cars of other car companies. Since its inception, Pacific Fruit Express Company has had the same two stockholders, owning its entire outstanding issue in equal shares. They are the defendant Southern Pacific Company and the Union Pacific Railroad Company, both corporate common carriers by railroad engaged in part in interstate commerce. The two stockholders have no connection each with the other through stockholdings or common directors. Prior to the organization of Pacific Fruit Express Company, the two railroads obtained the type of service, thereafter provided by Pacific Fruit Express Company, from third persons under contract. At no time have they directly provided such services to their shippers, nor themselves owned any "reefers."

Pacific Fruit Express Company rents its reefers not only to its stockholders, but also to other common carriers for use in railroad service throughout the United States. Rental is charged at a uniform rate on a milage basis. Pacific Fruit Express Company also provides, for a consideration, heater and refrigeration protective service similar to that furnished Southern Pacific Company and Union Pacific Railroad Company, to other carriers whose lines give them access to the plants of the Pacific Fruit Express Company.

In furtherance of its activities, Pacific Fruit Express Company owns and operates in several states, near the facilities of rail common carriers, plants, car shops, material and equipment for the maintenance, repair, rebuilding and servicing of reefers and heater units, and for the manufacture of ice. The ice yard at Bakersfield where plaintiff was injured was such a plant. Service is provided from that plant to Southern Pacific Company and to two other common carriers as well. (A. T. & Santa Fe and Sunset Railway.)

In 1946, Pacific Fruit Express Company's net worth was over $40,000,000. Some of its assets (real estate) have been acquired from its stockholders by purchase and lease; the remainder, from other sources including concerns which had theretofore provided similar protective service to Southern Pacific Company and Union Pacific Railroad Company.

The business of the Pacific Fruit Express Company is conducted through and by its own officers and employees who, except for directors having railroad connections, are not employed by any other firm, person or corporation. At the Bakersfield plant where plaintiff was injured, there were no employees of Southern Pacific Company engaged in performing services on behalf of Pacific Fruit Express Company.

In the performance of its business, Pacific Fruit Express Company neither moves nor controls the movement of "reefers" to and from or beyond its icing docks and plants. Such movements are handled by rail common carriers, principally Southern Pacific Company or Union Pacific Railroad Company. This was true in the case of the cars being unloaded when plaintiff was injured. Pacific Fruit Express Company possesses no rail motive power, except one plant locomotive used for shop switching purposes. The only railroad tracks owned by Pacific Fruit Express Company are shop tracks and unloading tracks. The former are used only in the operation of its car shops. The latter are used only for deliveries of ice to Pacific Fruit Express Company for use in its icing service. The only movement of reefers by Pacific Fruit Express Company are at its own shops and plants, on and along these tracks. These movements are incidental to the repair and rebuilding of reefers in the Pacific Fruit Express Company shops and the servicing

of reefers at the Pacific Fruit Express Company ice plants.

Both Southern Pacific Company and Union Pacific Railroad Company supply their shippers with "reefer" protective service under Perishable Protective Tariff No. 14, through the Pacific Fruit Express Company. The shippers specify to the carrier, in writing, the type of service desired; they may, by written order, change the type of service originally requested. There are various kinds of service available to the shippers under the tariff. The shipper's orders are transmitted by the carrier to the Pacific Fruit Express Company. The only orders given Pacific Fruit Express Company by Southern Pacific Company or Union Pacific Railroad Company in the performance of protective service are those whereby the orders of the shipper relating to the character of service desired, are transmitted. Pacific Fruit Express Company transacts none of its protective service business directly with the shippers. It publishes no tariffs, issues no bills of lading and makes no charges for such services except to common carriers by rail, to whom it is solely responsible and from whom alone it receives its compensation. The same is true of its car hiring business, except for the letting of a few "reefers" to shippers on a monthly basis, but not as a part of its regular operations. The only other revenue of Pacific Fruit Express Company is derived from other car companies for the repair of their cars delivered at Pacific Fruit Express Company shops.

Superseding an earlier contract dated July 1, 1936, the Pacific Fruit Express Company on July 1, 1942 entered into a written contract with the Southern Pacific Company and the Union Pacific Railroad Company. This contract contained the terms and provisions relating to so-called protective service against heat or cold to be performed by the express company for property transported by the railroad companies. This contract, after having been approved by the Interstate Commerce Commission, has been effective continuously since July 22, 1942. In general the contract fixed the compensation to be paid Pacific Fruit Express Company; provided for certain services to be rendered to the railroad companies; fixed the formulas for cooperation between the employees of Pacific Fruit Express Company and the railroad companies; provided for indemnification of the railroad companies against liability for injury or damage to personnel or property of the railroad companies while acting on behalf of the Pacific Fruit Express Company; fixed and delineated responsibility of the Pacific Fruit Express Company for damage to any freight as a result of any improper service on the part of the express company, and otherwise, in respects not necessary to be detailed, prescribed the operating duties and liabilities of the parties. Paragraph 8 of the agreement has been discussed in detail by the plaintiff and urged by him as being vital to the determination of the issue. It provides that "orders of the system on whose tracks loading, unloading or movement takes place shall be promptly and strictly obeyed." Likewise plaintiff places reliance on paragraph 1 of the agreement which provides that the Pacific Fruit Express Company shall perform the services specified in the contract "as the agent of the railroads."

### Discussion.

■ Plaintiff contends that the Pacific Fruit Express Company is a common carrier by railroad and hence within the reach of the Federal Employers' Liability Act. The Court holds to the contrary. The act itself subjects freight common carriers by railroad, while engaging in commerce between any of the several states or territories, to liability in damages to any person suffering injury while employed by such carrier in such commerce. 45 U.S.C.A. § 51. There does not seem to be any doubt at all that the business of renting refrigerator cars to railroads or shippers and providing protective service in the transportation of perishable commodities is not of itself that of a common carrier by railroad. Ellis v. Interstate Commerce Commissioner, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036; United States v. Fruit Growers Express Co., 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739; Wells Fargo & Co. v. Taylor, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205; United States ex rel. Chicago Refrigreator Company v. Interstate Commerce Com., 265

U.S. 292, 44 S.Ct. 558, 68 L.Ed. 1024; Reynolds v. Addison Miller Co., 143 Wash. 271, 255 P. 110.

The Federal Employers' Liability Act was amended in 1939. At that time, despite earlier decisions, some of which have been cited, no effort was made to include refrigerator companies within its terms. Congressional inactivity in that regard must be given its usual implication, i.e. acquiescence in the judicial rulings.[1] Federal legislation concerning the social security of employees employed in Interstate Commerce specially included employees of Refrigerator Companies within the meaning of the term carrier,[2] thus indicating Congressional awareness of the actualities. Thus the terms of the statute, plus the judicial interpretations of its meaning and the obvious knowledge of the Congress over a long period of time as to such judicial pronouncements, make it abundantly clear that Pacific Fruit Express Company itself is not a common carrier by rail and not subject to the provisions of the Act.

The record does not disclose any circumstance in any way indicating that either the organization of Pacific Fruit Express Company nor its subsequent operations purposed any duplicitous design to accomplish evasion of the Act. The Pacific Fruit Express Company was organized to commence business before the enactment of the Liability Act. It acquired none of its operating facilities from its railroad stockholders; the railroad stockholders are distinct and separate entities. The Pacific Fruit Express Company operates under its own management with its own facilities and employees who are not otherwise employed. Also it serves other carriers and car companies in addition to the two railroad stockholders. Consequently there is no basis for concluding that the Pacific Fruit Express Company was used by the defendant Southern Pacific Company "as a device to obtain the forbidden end." Ellis v. Interstate Commerce Com., supra [237 U.S. 434, 35 S.Ct. 647].

It is also urged by the plaintiff that the corporate organization of the Pacific Fruit Express Company and its relation to the Southern Pacific Company so identifies and integrates it with that railroad as to make it as well a common carrier by rail. It is true that the Pacific Fruit Express Company came into being with the prime purpose of furthering the transportation enterprise of its two stockholder railroads. It may be said that the two railroad companies could themselves well have performed the functions of Pacific Fruit Express Company as an integral part of their own common carrier business. But, absent trickery or device, this factor cannot in law make the Pacific Fruit Express Company the alter ego of the Southern Pacific Company. Ellis v. Interstate Commerce Com., supra; United States v. Elgin, Joliet & Eastern R. R. Co., supra.

Section 5 of the Federal Employers' Liability Act, 45 U.S.C.A. § 55, provides as follows: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."

The creation of the Pacific Fruit Express Company, although intended to further the transportation business of its two railroad stockholders, occurred before the Act was passed. There is therefore no basis for a charge that creation of Pacific Fruit Express Company violated Section 5. Chicago, R. I. & P. R. Co. v. Bond, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735; Robinson v. B. & O., 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849; Wells Fargo v. Taylor, supra.

It is suggested that the so-called indemnity clause of the Protective Service Contract amounts to a violation of Section 5. But inasmuch as this clause is one merely of indemnity, it does not have the

---

[1] United States v. Elgin, Joliet & Eastern R. R. Co., 298 U.S. 492, 500, 56 S.Ct. 841, 80 L.Ed. 1300.

[2] The Railway Labor Act, 45 U.S.C.A. § 151; The Railroad Retirement Act, 45 U.S.C.A. § 228a; The Railroad Retirement Tax Act, 26 U.S.C.A. Int.Rev. Code, § 1532; The Carriers Taxing Act, 45 U.S.C.A. § 261; Railroad Unemployment Insurance Act, 45 U.S.C.A. § 351.

effect of exempting the railroads from their liability as common carriers under the Act. Hence in no sense may it be considered a violation of Section 5.

We come now to the more substantial contention urged by the plaintiff—that the Protective Service Contract of July 1, 1942 created an agency relationship between the Pacific Fruit Express Company and the Southern Pacific Company. Paragraphs 1 and 8 of the agreement, heretofore cited, are urged by plaintiff as strong evidence that in all activities under the contract, the Pacific Fruit Express Company was no more than an agent of the Southern Pacific Company and hence that the latter is the real employer of plaintiff and subject to suit under the Act. Assuming the existence of an agency relationship between Pacific Fruit Express Company and the Southern Pacific Company, nevertheless nothing of record indicates that plaintiff was injured while pursuing activities related to the alleged agency relationship between the two defendants. The Pacific Fruit Express Company performed refrigeration services at Bakersfield in addition to those covered by the contract of July 1, 1942. It also served the Atchison, Topeka and Sante Fe Ry. and the Sunset Railway. The eventual destination of the ice which plaintiff was helping to unload at the time of his injury was neither known or foreseen at the time. Thus nothing in the record indicates that the plaintiff was injured while employed in the service of his master's master.

But in a broader sense, it is clear to the court that the contract of July 1, 1942, viewed in its entirety, was not a contract of employment at all. With its terms vitalized by actual operation this becomes manifest. The express provision of the agreement that the protective service furnished by the Pacific Fruit Express Company was "as the agent of the railroads" does not bring into existence an agency relationship, if one does not, in fact, exist. It is the sum total of the position and dealings of the parties which fixes their legal status. Whenever a legal relationship is a creature of contract, the contractual terms coupled with the meaning they have acquired from practical application, determine the nature of the relationship created. Hearst Publications Inc. v. United States, D.C., 70 F.Supp. 666, affirmed 9 Cir., 168 F.2d 751; Pacific Lumber Company v. Industrial Accident Com. 22 Cal.2d 410, 139 P.2d 892; Matcovich v. Anglim, 9 Cir., 134 F.2d 834. Furthermore, the mere use of the word "agent" does not bring into being the status of master and servant or employer and employee. For the term "agent" is not infrequently used to designate prescribed activities in many independent contract relationships. State Compensation Ins. Fund v. Industrial Accident Commission, 216 Cal. 351, 361, 14 P.2d 306.

The terms of the Protective Service Contract, as well as the manner of its performance, indubitably constitute the parties independent contractors. The Pacific Fruit Express Company performed with its own employees at its own expense. No right of control over the manner and means of performance was reserved to the railroads. Hearst Publications Inc. v. United States, supra.

To be sure, certain conditions of performance and means of cooperation and assistance are specified in the contract. But these provisions, directed to the successful accomplishment of the contract's broad objectives, do not invest the railroads with *control* of the method of performance. Los Angeles Athletic Club v. United States, D.C., 54 F.Supp. 702, at page 706; cf. Radio City Music Hall v. United States, 2 Cir., 135 F.2d 715, at page 718; Hull v. Philadelphia & R. R. Co., 252 U.S. 475, 480, 40 S.Ct. 358, 64 L.Ed. 670.

Cases, such as Pennsylvania R. R. Co. v. Roth, 3 Cir., 163 F.2d 161, in which the railroad company employed a contractor to operate one of its railroad yards, are not apropos, for there is absent here that substantial degree of control over the manner and means of performance as was present in Pennsylvania R. R. Co. v. Roth and like cases. See Chicago, R. I. & P. R. Co. v. Bond, supra.

The remedial and humanitarian purposes of the Employers' Liability Act in no way compel an interpretation of the

contract in favor of an employment or agency relationship. It is not amiss to point out that plaintiff is not without redress for his injuries. The benefits of the Workmen's Compensation Act of California are available to him. It is not for the courts to extend the coverage of the Liability Act into new fields. During the 40 year life of the Employers' Liability Act, Congress, while liberalizing its benefits, has not seen fit to extend the scope of the statute beyond railroading in its true sense.

The contention, that plaintiff's activities at the time of the accident were in connection with a railroad movement, is unsubstantial. It is true at the time one car was being manually pushed away from the loading platform, while another was being driven up by a cable and winch. A railroad movement connotes something more than the mere movement of a car over a rail. Certainly this is not enough to constitute common carriage by rail.

For the reasons stated, the cause is dismissed.