[Civ. No. 10901. Third Dist. Mar. 4, 1965.]

JUAN G. AGUIRRE, Plaintiff and Appellant, v. SOUTHERN PACIFIC COMPANY et al., Defendants and Respondents.

Colley & McGhee and Nathaniel S. Colley for Plaintiff and Appellant.

Waldron A. Gregory, Richard C. Townsend and Herbert A. Waterman for Defendants and Respondents.

PIERCE, P. J.—Plaintiff brought this action under the Federal Employers' Liability Act (FELA) (45 U.S.C.A.,

§§ 51-60) against his employer, Pacific Fruit Express Company (PFE), and two railroads, Southern Pacific Company (SP) and Union Pacific Company (UP). It is uncontroverted that the action was for injuries suffered in the course of interstate employment. Defendants, contending there was no triable issue of fact, moved for summary judgment under California Code of Civil Procedure section 437c. The motion was granted and judgment of dismissal followed. On appeal the questions are: (1) Does California Code of Civil Procedure section 437c ever apply in a FELA case? (2) If so, were the affidavits and depositions in support of defendants' motion here adequate to sustain the trial court's finding that no triable issue of fact existed? (3) Was PFE incontrovertibly shown not to be a common carrier by railroad? (4) Was plaintiff incontrovertibly shown not to be an employee of the railroads? (5) Is there a total absence of any averred fact which could have justified a finding that the contract between PFE and the railroads was a "device" to evade FELA? We answer all these questions in the affirmative and therefore affirm the judgment.

Included in the record are affidavits or declarations by the manager of personnel of PFE, its attorney, and its assistant to the vice president and general manager, Mr. Cranmer; also a deposition by the latter and a deposition of plaintiff, Juan Aguirre. These were offered by defendants, the moving party. From these the following facts appear: Plaintiff was injured on May 25, 1960, while working as a carpenter inside a refrigerator car located on tracks in the PFE repair yard in Roseville, California. The injury was caused by the falling of a bulkhead in the car. Aguirre was employed by PFE and the work was performed under the direction of his foreman, also employed by PFE.

PFE owns and maintains a fleet of 21,954 refrigerator cars. It lets them to practically all the railroads of the United States. The cars are used to transport by rail perishable fruits and vegetables which require refrigeration or heating while en route. In addition to the letting of cars PFE provides protective services against heat or cold. These are furnished at stations at various points along the route of travel in 14 states. Such service is by use of ice or mechanical refrigeration or heating. It is rendered by employees hired and paid and wholly controlled by PFE at these stations, all of which are owned or leased by PFE. With one exception it does not move its cars or control their movement, either en route or for switch-

ing purposes at its various servicing yards. Switching operations are purchased by PFE from the various railroads. The one exception is that at Roseville one yard switch engine is owned and operated by PFE, but solely within its own yard.

PFE also owns and lets a number of trailers under contracts with 33 railroads and is presently negotiating with 61 other railroads for the letting of trailers.

Every year PFE sends out representatives to survey growing crops. The purpose of this is to estimate the size and date of harvest of the crop so the number of cars needed and when they will be needed can be estimated. The information thus received is furnished the railroad affected. No separate charge is made for this service. It is included in the rentals per mile for the letting of the cars. Sometimes when a crop is ready for shipment the grower will notify PFE, sometimes he will notify the railroad. Whichever is notified the information is relayed to the other.

PFE was organized as a corporation in December 1906 under the laws of the State of Utah. It was created by defendants Southern Pacific Company (SP) and Union Pacific Railroad Company (UP). Each then owned and now owns 50 per cent of PFE's corporate shares. Mr. Cranmer avers that prior to the organization of PFE neither of the railroads had performed the functions of PFE described above.

PFE has its own board of directors none of whom are directors of either UP or SP. It has approximately 4,000 employees. Its net assets in 1962 were approximately $148,000,-000. Its net income in that year was $5,000,000. Its places of business are separate from the railroads.

Plaintiff's sole affidavit in opposition to the motion for summary judgment is that of his attorney. It avers that plaintiff had fully explained the facts and circumstances of the case to affiant, that affiant believed them to be true, and that under them it was affiant's opinion that the case was properly brought under FELA; that said opinion was based upon the attorney's experience in many FELA cases, two of which had reached the Supreme Court. This opinion is a conclusion of law.

The only averments of fact, therefore, which are before us are those in defendants' affidavits and depositions.

The preliminary questions are whether the issues are determinable upon a motion for a summary judgment under Code of Civil Procedure section 437c and, if so, whether defendants' moving papers are adequate.

Section 437c provides that where a claim is made by the

defendant that the action has no merit or, by the plaintiff, that there is no defense to the action, the issue of whether or not there is a "triable issue of fact" may be tested by the court on motion by affidavits. The affidavits in support of the motion "*must contain facts* sufficient to entitle plaintiff or defendant to a judgment in the action," and the affidavits in opposition to the motion "*shall set forth facts*" showing (if the opposing party be the plaintiff) that he has "a good cause of action . . . upon the merits." (Italics supplied.) ▮ It will thus be noted that *factual* averments are specified, although it has been held that "such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts." (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264].)

▮ The trial court in considering a motion for summary judgment determines only whether a triable issue of fact has been presented. If one has been presented the court is not empowered to determine the issues summarily. Such determination must await trial. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) ▮ In making the "triable issue of fact" determination the court must *strictly* construe the affidavits of the moving party, *liberally* construe those of the opposing party. (*Eagle Oil & Ref. Co.* v. *Prentice, supra,* at p. 556; *Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* at p. 417.)

▮ But properly invoked, the purpose of section 437c is salutary. It "undertakes the expedition of litigation by the elimination of needless trials . . ." (*Spencer* v. *Hibernia Bank,* 186 Cal.App.2d 702, 712 [9 Cal.Rptr. 867], appeal dismissed and certiorari denied 368 U.S. 2 [82 S.Ct. 15, 7 L.Ed.2d 16]; see also *Coyne* v. *Krempels,* 36 Cal.2d 257 [223 P.2d 244].)

▮ In the case last cited the court stated (on p. 262): "The procedure for the entry of a summary judgment provides a method by which, if the pleadings are not defective, the court may determine whether the triable issues apparently raised by them are real or merely the product of adept pleading."

▮ And that case also points out that where the moving party's affidavits set forth facts sufficient to sustain a judgment in his favor and those facts are uncontroverted by the affidavits of the opposing party, a summary judgment is proper. (*Coyne* v. *Krempels, supra,* at p. 263.) ▮ In *Pacific Inter-Club Yacht Assn.* v. *Richards,* 192 Cal.App.2d 616, this court said at page 620 [13 Cal.Rptr. 730]: "[I]f the opponent's affidavits raise no genuine issue of material fact, but only create an issue

of law, summary judgment is proper. (*Bank of America etc. Assn.* v. *Casady,* 15 Cal.App.2d 163 [59 P.2d 444].) ''

■ Plaintiff contends that the California summary judgment procedure is not available in a FELA case. He cites in support of that proposition two cases brought under the Tucker Act in the Federal Court, *United States* v. *Lindholm,* 79 F.2d 784 [103 A.L.R. 213], and *United States* v. *Stevenson,* 79 F.2d 788. But in those cases the court, while expressly recognizing that in an ordinary civil suit the desirability of shortening the procedure by the elimination of unnecessary delays was unquestioned, and while stating that state summary judgment procedure statutes had been recognized as controlling under the Conformity Act (28 U.S.C.A., § 724), held that this rule could not be applied in proceedings by veterans to recover disability payments under war risk insurance as provided by the Tucker Act (24 Stat. 505). The reason for this ruling becomes clear by reading the provisions of the Tucker Act (recited in the *Lindholm* decision). That act, in itself, provides a proceeding summary in nature, quite irreconcilable with state summary judgment laws which, if superimposed thereon, would merely cause confusion. No such incompatibility exists in cases brought under FELA. They are merely special statutory tort liability actions. And whenever specific provisions therein do not conflict we perceive no reason why state practice rules should not apply, and it has been so held. (*Minneapolis & St. Louis R.R. Co.* v. *Bombolis* (1915) 241 U.S. 211 [36 S.Ct. 595, 60 L.Ed. 961].) In *Reynolds* v. *Atlantic Coast Line R. Co.* (1952) 196 F.2d 643, a FELA case tried in a federal court, a summary judgment issued therein was affirmed on appeal.

Plaintiff next argues that even though provisions of California's summary judgment section may be generally available in FELA cases it was not properly invoked under the facts here which, it is argued, require a jury's determination. ■ It is true that in FELA cases, as in others, it is only where reasonable men cannot reach differing conclusions on the issues that a judge may take the case from the jury (*Baker* v. *Texas & Pacific R. Co.,* 359 U.S. 227 [79 S.Ct. 664, 3 L.Ed.2d 756]). But whenever all the evidence is so clear that reasonable minds cannot differ as to the legal conclusions which must be drawn therefrom, it is the function of the court and not of the jury to draw such conclusions. (*Hicks* v. *Reis,* 21 Cal.2d 654, 660-661 [134 P.2d 788]; *State of California* v. *Superior Court,* 208 Cal.App.2d 659, 665 [25 Cal.Rptr. 363]; 3 Witkin, Cal. Procedure, Appeal, § 88, p. 2252.) ■ Also when

facts have been resolved the construction of a statute and its applicability to a given situation are matters of law to be determined by the court. (*Estate of Madison*, 26 Cal.2d 453, 456-457 [159 P.2d 630]; *Gibbons & Reed Co.* v. *Department of Motor Vehicles*, 220 Cal.App.2d 277, 285 [33 Cal.Rptr. 688, 927].) The discussion hereinafter will develop that that is the situation here. The facts which are involved in reaching that determination have been related at the outset of this opinion.

The problem to which we relate them is the interpretation of FELA (45 U.S.C.A., §§ 51-60) and specifically that portion of section 51 which provides that "Every common carrier by railroad . . . [while engaged in interstate commerce] shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . [or in the case of death to the employee's personal representative for the benefit of specified relatives] resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, . . ." or from any negligently defective equipment. Also involved in the discussion to follow is section 55 which provides in part: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void. . . ."

From a reading of section 51 it will be obvious that if the facts of this case show a cause of action under FELA it can only be because either (a) defendant PFE is a "common carrier by railroad," or (b) this employee, the plaintiff, at the time of his alleged injury, was, although nominally an employee of PFE, actually employed by SP. Those are the questions to which we address ourselves.

The case is one of first impression in the California state courts, but the questions stated are not novel. They have been decided in other jurisdictions adversely to plaintiff's position under similar facts to similar entities (e.g., the Pullman Company in *Robinson* v. *Baltimore & O. R. Co.* (1914) 237 U.S. 84 [35 S.Ct. 491, 59 L.Ed. 849]; to another refrigeration company, Armour Car Lines, in *Ellis* v. *Interstate Commerce Com.* (1914) 237 U.S. 434 [35 S.Ct. 645, 59 L.Ed. 1036]; to express companies in *Wells Fargo & Co.* v. *Taylor* (1920) 254 U.S. 175 [41 S.Ct. 93, 65 L.Ed. 205]; in *Missouri, K. & T. Ry. Co. of Texas* v. *Blalack* (1912) 105 Tex. 296 [147 S.W. 559]; and in *Jones* v. *New York Cent. R. Co.* (6th Cir. 1950) 182 F.2d 326; and to this very defendant, PFE, in *Gaulden*

v. *Southern Pac. Co.* (1948) 78 F. Supp. 651; affirmed upon grounds and for reasons stated in the trial court opinion in 174 F.2d 1022 (9th Cir.), and in *Moleton* v. *Union Pac. R. R. Co.* (1950) 118 Utah 107 [219 P.2d 1080].) We find all of the answers to plaintiff's principal contentions in those decisions.

*Jones* v. *New York Cent. R. Co., supra,* 182 F.2d 326, involved an action attempted to be brought under FELA by a messenger employed by Railway Express Agency. He had been injured while getting onto an express car, a part of a train operated in interstate commerce by defendant railroad. ■ The court in affirming a district court decision denying recovery pointed out that the United States Supreme Court as early as 1920, in *Wells Fargo & Co.* v. *Taylor, supra,* 254 U.S. at page 187, had held: "In our opinion the words 'common carrier by railroad,' as used in the act, mean one who operates a railroad as a means of carrying for the public,— that is to say, a railroad company acting as a common carrier." In *Jones* it is also pointed out that this was not only an interpretation of words in their common acceptation but also in the context of FELA and of similar statutes. It was stated further that FELA, originally enacted in 1908, had been amended by Congress in 1939, during which period express company employees and employees of similar entities in numerous court decisions had been excluded from bringing actions under FELA. This, the court said, indicated an acquiescence by Congress in the courts' exclusions.

■ The court in *Jones* also answered the contention made by plaintiff therein (and by plaintiff here) that if an employee, although not employed by the railroad, was engaged in the work of railroading, he was intended to be covered by the act. It stated (on p. 328) that the answer to that question was to be "found in *Robinson* v. *Baltimore & Ohio R. R. Co.,* 237 U.S. 84, 94 [35 S.Ct. 491, 59 L.Ed. 849] . . . , in which the court said: 'We are of the opinion that Congress used the words "employee" and "employed" in the statute in their natural sense, and intended to describe the conventional relation of employer and employee. It was well known that there were on interstate trains persons engaged in various services for other masters. Congress, familiar with this situation, did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad company was to be liable under the act.' "

■ In *Jones* the court cites with approval (on p. 328) *Gaulden* v. *Southern Pac. Co., supra,* 78 F. Supp. 651. That case involved, as stated above, this very defendant, PFE. The

facts pleaded and stipulated to therein are almost identical to those included in the Cranmer affidavit and deposition recited above. They are stated at length in the opinion of the court (by Judge Louis Goodman). The court held that PFE was not a common carrier by rail. It reasoned that the business of renting refrigeration cars and providing protective services (i.e., icing and maintaining refrigeration and heating equipment on the cars en route to their destination) was not the operation of a railroad "as a means of carrying for the public. . . ." As in *Jones,* the court in *Gaulden* pointed out that the fact that over a period of 25 years court decisions had excluded employees of refrigeration and similar companies from bringing actions under FELA indicated that Congress when it had amended the law in 1939 without including such employees, evidenced a congressional satisfaction with the law as court-interpreted.

 The court in *Gaulden* also addressed itself to the contention made there, and made here, that the protective service contract between SP and PFE made PFE an agency of SP and that therefore SP was the real employer of plaintiff. In denying this contention the court (on p. 656) assumed an agency relationship, but pointed out that the protective service contract was not a contract of employment, that PFE hired its own employees at its own expense; that "No right of control over the manner and means of performance was reserved to the railroads," this being the determinative factor in ascertaining whether an agent is or is not an independent contractor whose employees do not have a master and servant relationship with the railroad.

 Referring to section 55 of the act the court found that there was no evidence of any "duplicitous design to accomplish evasion of the Act" on the part of the railroad. It stated that the facts, on the contrary, showed that PFE had acquired no operating facilities from the railroads; that before its creation SP and UP had contracted for refrigeration cars and protective services from third parties and there was therefore no peeling-off of a function theretofore performed directly by the railroads; that the railroads' shareholders were distinct entities; that PFE had its own management, its own facilities, its own employees controlled wholly by PFE. Also noted was the fact, likewise appearing here, that PFE rents its cars and provides its services to most, if not all, other railroads in the United States. One other factor was included by Judge Goodman in *Gaulden* as a

reason to conclude that PFE had not been organized as a device to evade the act. It was stated in the opinion that PFE had been organized *before* FELA. (Congress had adopted FELA in 1908 (35 Stat. 66), PFE was organized in December 1906.) The court's statement, although literally true, is misleading. It overlooked the fact that another employers' liability act of June 11, 1906 (34 Stat. 232) had been enacted but declared unconstitutional; therefore, it would not have been impossible for SP and UP to have organized PFE to avoid the consequences of employers' liability. We do not regard this inaccuracy as having resulted in a misshapened conclusion. Consideration of the overall operation had made it abundantly clear that PFE was not a device to evade FELA. Neither was it the *alter ego* of defendant railroads. Its creation, and sole share ownership, by two of the many railroads which rent its cars and services, were isolated factors in a total overriding adding up of facts showing it to be an independent enterprise.

We have reviewed the *Gaulden* case with particularity. We do so because our views accord with the reasoning of Judge Goodman, which we adopt as a basis for our holding. The facts of the two cases are, as stated above, nearly identical.[1] Where new facts emerge in the case at bench we do not find them significant. The sending out of field representatives by PFE to survey growing crops, although beneficial to the railroads served and its shippers, is also a fundamental function of the refrigeration car rental business.

Plaintiff has adverted to the fact that PFE owns and operates a switch engine at its Roseville yard. (This fact was also mentioned in the *Gaulden* opinion.) The engine, controlled wholly by PFE, is used exclusively to shuttle cars within its own yard. This does not constitute PFE a common carrier by railroad. It is not a movement of cars by rail "as a means of carrying for the public. . . ." Its purpose is to serve its own intramural needs in the icing of cars.

Of the cases cited by plaintiff in support of his proposition that he, although nominally an employee of PFE, was actually employed by the railroad, a study of three will suffice to illustrate their inapplicability. In *Downs* v. *Baltimore & Ohio R. Co.* (1951) 345 Ill.App. 118 [102 N.E.2d 537, 30 A.L.R.2d 503], plaintiff was employed by a dock company

---

[1]So also were the facts in *Moleton* v. *Union Pac. Ry., supra,* 118 Utah 107 [219 P.2d 1080]. This case also referred to, and adopted the rule and reasons of, *Gaulden.*

and was injured in the course of his employment unloading iron ore from a boat for transfer to defendant's railroad cars at a lake port. He sued under FELA. The trial court held that plaintiff was an employee of the railroad and entitled to recover, negligence having been proven. Judgment was affirmed on appeal. The court held (on p. 539 of 102 N.E.2d) that when work by a railroad has been contracted out the question of whether or not a master and servant relationship exists between the railroad and the employees of the contractor hinges upon "whether or not the defendant . . . [the railroad] retained and assumed control over the means and method by which the work of the dock company [the contractor] was done. . . ." The court analyzed the facts to determine that question. A reference by us to that analysis will illustrate how the operations there differed from those in the case at bench. For example, it was found that the railroad which before 1935 had performed all the described transportation services directly had turned over all of its dock facilities worth over a million dollars to the dock company without compensation, had transferred all of its employees to the dock company but had continued to pay their wages and other operating expenses of the contractor; that it had also paid all property taxes and insurance. All work by the dock company was performed under orders from the railroad. There the railroad controlled the dock company which was its *alter ego*; not so, here.

Plaintiff argues as controlling on the question of his status as an *actual* employee of the railroad, the case of *Sinkler* v. *Missouri Pac. R.R. Co.*, 356 U.S. 326 [78 S.Ct. 758, 2 L.Ed.2d 799]. We see no similarity. There petitioner was an employee of the railroad who was injured by the negligence of employees of an independent corporation which performed switching operations. It was held that said corporation, although an independent contractor, was also an "agent" under a provision of FELA which made a railroad liable to its employees for injuries caused through the fault of " 'any of the officers, agents, or employees' " of the railroad. It did not hold employees of the independent contractor to be employees of the railroad nor was there anything in the court's reasoning suggesting such thinking by the court. On the contrary, the opinion stated (on p. 804, 2 L.Ed.2d, 356 U.S. 331) that "the corporate autonomy of the Belt Railway, and its freedom from detailed supervision . . ., are irrelevant. . . ."

Also cited by plaintiff is *Eddings* v. *Collins Pine Co.*, 140

F.Supp. 622, which held that a lumber corporation which wholly owned and *controlled* a railroad corporation was itself a common carrier by railroad and could not escape its liability to an injured workman. The facts (as stated by the court on p. 626) were, as the court expressed it, "an unusual situation where a common carrier . . . has completely delegated its operating functions to its parent corporation, a lumber company, whose normal business operation is not that of a common carrier. The lumber company is in fact doing the railroading for the authorized railroad company as the plaintiffs put it, 'down to the last paper clip.' " Those—obviously—are not the facts of the case at bench.

Plaintiff urges other points which we will discuss briefly. He states that the affidavit and deposition of Cranmer contain matters which are hearsay or if based upon knowledge gained from documents, not the best evidence. Specifically he objects to acceptance as fact the statements that the car rentals and protective services now performed by PFE were not functions of the two defendant railroads before PFE's existence. And generally objection is made that Cranmer could not have had personal knowledge of the motives and intent of SP and UP in 1906 when they organized PFE and therefore the possible status then of PFE, as a duplicitous device to evade liability to railroad employees, cannot be ruled out.

Since it appears that the early records of the railroads and of PFE have been destroyed, and since it is probable no one now alive has personally-observed knowledge of the matters under discussion, plaintiff effectually is arguing that the facts under discussion are unprovable and that plaintiff must be allowed his action under FELA *because* they are unprovable. Our reasoning does not lead us to that conclusion.

In the first place proof of the fact that prior to the organization of PFE both railroads contracted with third parties for the type of services performed thereafter by PFE (a fact stipulated to in the *Gaulden* case) is not indispensable. Nor is it incumbent upon defendants to prove that no duplicitous design prompted the creation of PFE as a "device" to evade FELA. In summary judgment proceedings it was a matter of defense which plaintiff, obviously, has no facts to establish.[2]

---

[2]As to whether or not Mr. Cranmer, who professes to have knowledge —apparently by common reputation—of the early history of PFE, can qualify as a witness in that regard we express no opinion. We note in passing that all knowledge not obtained empirically is acquired through

Moreover, even if it *could* be established that PFE, at its origin, had been a device to evade FELA, it would by no means follow that it must now be regarded as an interstate railroad or that its employees must now be considered employees of the railroad. As has been demonstrated not only by the facts hereinabove stated and conclusions necessarily to be drawn therefrom, but also by the facts and findings in two other cases, *Gaulden* and *Moleton, supra,* PFE has been operating as a wholly independent refrigeration car rental and protective service corporation for many years. It has built up a nationwide business. The railroads have exercised no control over any part of its operations nor over its employees. These employees have, during all of those years, been working under, and enjoying the benefits of, the workmen's compensation laws of California and of the other states in which PFE operates (not the least of which benefits is compensation for all employment-induced health and accident casualties regardless of proof of negligence.) We would not lightly conclude that Congress, in the enactment of section 55 of FELA, intended that the 4,000 employees of a large corporation now operating independently and legally as a nonrailroad must suddenly be required to switch from the system of state workmen's compensation laws to the federal railroad employees system, a transfer inevitably fraught with hardship upon both employees and employer occasioned by readjustment—for the sole reason that 57 years ago the legitimacy of the employer's corporate birth may have been questionable.

Plaintiff makes other arguments on appeal. He contends that notice of the hearing of the motion for summary judgment lacked sufficiency by hours, or at most, a day. Nevertheless, he appeared generally, his counsel argued well and ably and claimed no surprise, and twenty days elapsed between the hearing and the court order. Plaintiff points to an earlier motion under section 437c, denied, and he contends

hearsay. Dean Wigmore says (2 Wigmore, Evidence (3rd ed.) § 665, p. 782) that the rule excluding hearsay ''cannot be enforced as a rule of unbending rigidity. There must be exceptions; for the daily experience often recognizes a practical trustworthiness in beliefs not founded altogether on personal observation. The law of Evidence must follow the facts of experience.'' Code of Civil Procedure, section 1870, subdivision 11, provides in part for admission of evidence of ''Common reputation existing previous to the controversy, respecting facts of a public or general interest more than thirty years old . . . .'' Work of the California Law Revision Commission (see 6 Reports, Recommendations and Studies (Sept. 1964) Appendix, art. VIII, Hearsay Evidence, p. 335) may portend future statutory liberalization of this rule.

the law does not contemplate two such motions. (Reason for denial was the contention of plaintiff's counsel that discovery proceedings had not been completed and he had not had an opportunity to ascertain all the facts.) At oral argument plaintiff, while not abandoning these contentions, urged this court to decide the appeal on its merits. We believe we have done so.

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.