[Civ. No. 11238.   Third Dist.   July 14, 1966.]

PACIFIC INDEMNITY GROUP, Plaintiff and Appellant, v. JAMES HOWARD DUNTON et al., Defendants and Respondents.

Robert M. Cole for Plaintiff and Appellant.

Young, Nareau & Hoyt and Margaret E. Hoyt for Defendants and Respondents.

PIERCE, P. J.—In this opinion reversing a summary judgment for defendants, we answer affirmatively the following question: May a tortfeasor-judgment debtor be liable to the tort victim's collision-insurer for having paid the tort victim's full judgment without deducting the amount theretofore paid by the insurer to the victim where (a) said insurer had notified the tortfeasor, before a (compromise) judgment, of its subrogation claim and (b) the tortfeasor (through *his* insurer) had promised said collision-insurer-subrogee that its name would be included "on the draft?" The basis of our holding is that because those facts appear in the proceedings for summary judgment there is a triable issue of fact under principles of estoppel.

On February 23, 1962, a Ford pickup owned by Albert and Roy Barrow (the Barrows) was involved in a collision with a panel truck driven by defendant Dunton and owned by defendant Barnett (tortfeasors). The Barrows carried collision insurance ($50 deductible) with plaintiff, Pacific Indemnity Group (Pacific). Claiming negligence, the Barrows sued tortfeasors for personal injuries and for the *full* property damage to their pickup. Tortfeasors' insurer (PL and PD) was State Farm Mutual Insurance Company (State Farm) which furnished them an attorney to defend and who apparently took full charge of the litigation, including negotiations for a settlement.

Meanwhile, Pacific paid the full collision coverage: total damage to the pickup $691, less $50 deductible. It then, through its claims manager, Hennessy, notified tortfeasors of its subrogation rights for the amount paid, less salvage. On April 17, 1962, tortfeasors forwarded the letter to their insurer, State Farm, advising Pacific that State Farm was their insurer. All negotiations thereafter were between Pacific (through Hennessy) and representatives of State Farm.

On April 23, 1962, State Farm wrote Pacific, acknowledging their public liability and property damage coverage and stated: "I respectfully ask that you diary your file for a liberal period." The letter asked for documents "in support of your subrogation claim." On May 1, 1962, the requested information was furnished by Pacific. On July 20, 1962, State Farm advised Pacific that suit had been filed by the Barrows; it gave the name of their attorney, Harry Ackley, and stated that the damages prayed for included the full property damage. The letter also asked whether Pacific's subrogation rights had been assigned to Ackley. On August 10, 1962,

Pacific informed State Farm it had not "given this matter to Mr. Ackley for collection."

On March 14, 1963 (seven months later), Hennessy had a conversation with Robert Grussenmeyer, State Farm's representative, which is the crux of this case (although there is nothing in the briefs and record before us to indicate that its significance was ever specifically called to the attention of the trial judge). Grussenmeyer told Hennessy that the case was set for trial, that Ackley would not remove the total "PD" from the complaint; that State Farm was making a settlement offer of $750 (this offer was made under Code Civ. Proc., § 997) and was *"including our* [Pacific's] *name on the draft."* (Italics supplied.)

Pacific did not intervene. The settlement was accepted. A judgment was entered. The full amount was paid. Nothing was paid Pacific. A satisfaction of this judgment was filed.[1] All of the foregoing facts appear in affidavits, counteraffidavits and verified letters appended thereto. They are the facts upon which the trial court granted defendants' motion for a summary judgment.

The rules covering the granting or denial of motions for summary judgment under Code of Civil Procedure section 437c are well settled. This court has had occasion to state them frequently. The language of the code section itself is clear and needs no repetition here. ■ The trial court in considering such a motion determines only whether a triable issue of fact has been presented. ■ If one has, the court is not empowered to determine it summarily. That determination must await trial. ■ In making the "triable issue of fact" determination the court must strictly construe the affidavits of the moving party, liberally construe those of the opposing party. ■ In short, triable issues must be heard at trial upon their merits although Code of Civil Procedure section 437c, applied in a proper case, is a salutary method of expediting litigation by the elimination of needless trials. (*Canifax* v. *Hercules Powder Co.,* 237 Cal.App.2d 44, 49 [46 Cal.Rptr. 552] ; *Aguirre* v. *Southern Pac. Co.,* 232 Cal.App.2d 636, 641 [43 Cal.Rptr. 73] ; *Garlock* v. *Cole,* 199 Cal.App.2d 11, 14-15 [18 Cal.Rptr. 393], and cases there cited.)

---

[1] It appears in the record that in a draft of a "Release and Satisfaction of Judgment" prepared by defendants' attorney and furnished by him to Ackley Pacific's name appears as a party signatory. In these proceedings we must assume that that form was not signed; also that the draft delivered by State Farm for some reason did not include Pacific as a payee as promised. The reasons for these omissions are facts not before us and facts we cannot adjudicate.

Within those rules a summary judgment cannot be upheld here. If all that appeared was that Pacific, having a subrogation right, had notified the tortfeasors and their insurer of that right and the extent thereof, then no cause of action in Pacific against tortfeasors would exist, even though it also appeared that Pacific had instructed them not to pay any judgment or make any out-of-court settlement of the action without honoring its subrogation claim. The reason is that an insured tort victim is not entitled to split his cause of action (*Kidd* v. *Hillman*, 14 Cal.App.2d 507, 510 [58 P.2d 662]); once a final judgment is obtained against the tortfeasor it is res judicata. If the tort victim has failed to include all damages suffered neither he nor his subrogee-insurer can sue again. The tortfeasor on his part, once the judgment is final, must pay the judgment or suffer execution for its enforcement. And the giving of a satisfaction of judgment (required to be given by law when the judgment is paid under penalty of damages (Code Civ. Proc., § 675) gives no cause of action to the carrier-subrogee against the tortfeasor. *Anheuser-Busch, Inc.* v. *Starley,* 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198].) There is no inequity in those rules. The carrier-subrogee, under such circumstances, could have protected itself by intervening in the principal action before judgment. (*Hausmann* v. *Farmers Ins. Exchange,* 213 Cal.App.2d 611, 613-614 [29 Cal.Rptr. 75].) By such action it would make sure that, out of any settlement or judgment, it would get its share.

But here, as shown above, the affidavit of Hennessy shows, in addition to the facts just stated, others which alter the situation. The judgment entered here was a stipulated one made after a settlement. Defendants' insurer, State Farm, before the settlement was made, had, according to Hennessy, given a promise that Pacific would be included as a payee of the settlement draft—thus assuring that its claim would either be paid in full or in any event it could control the division. By the representation made by State Farm, plus the reliance thereon by Pacific evidenced by its forbearance from intervention, all the elements of an estoppel emerge. (*Commercial Standard Ins. Co.* v. *Winfield,* 24 Cal.App.2d 477, 478 [75 P.2d 525].)

That does not mean tortfeasors should ultimately be required to suffer the double liability. State Farm was allegedly the agent of tortfeasors. That is usually the case under a public liability and property damage insurance indemnity contract. (7A Appleman, Insurance Law and Prac-

tice, § 4681, p. 422.) ▮ Under the facts as they now appear, the insurer-agent was negligent. It subjected its insured to potential double liability for property damage. An insurer owes a duty to its insured to exercise at least ordinary skill when it takes charge of the latter's defense. (7A Appleman, *op. cit.*, § 4687, pp. 476-479.) Tortfeasors' liability to Pacific is under the doctrine of *respondeat superior*. Nothing here indicates that tortfeasors acted personally to approve or ratify the representations of State Farm to Pacific. The wrong being that of the agent, tortfeasors have an "action-over," a right of recoupment for any damages suffered as the result of the wrongful act of the agent. As between the two, the obligation of the agent is primary, that of the principal, secondary. (*Continental Casualty Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]; *Herrero* v. *Atkinson*, 227 Cal.App.2d 69, 77 [38 Cal.Rptr. 490].)

▮ Although in the instant case the principal was properly sued without joinder of the agent, there would appear to be no reason why the trial court here, in the exercise of a sound discretion, should not grant a motion by tortfeasors for permission to cross-complain against State Farm for any loss tortfeasors may sustain as a result of a possible judgment in favor of Pacific against them. (Code Civ. Proc., § 442; *Roylance* v. *Doelger*, 57 Cal.2d 255, 260 [19 Cal.Rptr. 7, 368 P.2d 535]; *Dreybus* v. *Bayless Rents*, 213 Cal.App.2d 506 [28 Cal.Rptr. 825].) ▮ Tortfeasors' attorneys, although the same firm as that furnished by State Farm, owe sole allegiance to tortfeasors in this action. Such joinder would prevent a multiplicity of actions and expedite the termination of this litigation in which it appears that less than $500 is involved. Under any standard of evaluating the time of courts, clerks and counsel several thousand dollars more than that have already been expended.

In conclusion it seems not amiss to emphasize that here, as in any reversal of a summary judgment, the facts related have not been proved. The issues have not been tried; they are merely triable. That is the limit of our holding.

The judgment is reversed.

Friedman, J., and Regan, J., concurred.