[Civ. No. 10943.   Third Dist.   Sept. 8, 1965.]

ANDREW B. CANIFAX, Plaintiff and Appellant, v. HER-CULES POWDER COMPANY et al., Defendants and Respondents.

[Civ. No. 10944.   Third Dist.   Sept. 8, 1965.]

FRANK SHIPE, Plaintiff and Appellant, v. HERCULES POWDER COMPANY et al., Defendants and Respondents.

[Civ. No. 10945.   Third Dist.   Sept. 8, 1965.]

JOAN GOOD, Individually and as Guardian ad Litem, etc., Plaintiff and Appellant, v. HERCULES POWDER COMPANY et al., Defendants and Respondents.

[Civ. No. 10946.   Third Dist.   Sept. 8, 1965.]

DOROTHY ZUREK, Plaintiff and Appellant, v. HERCULES POWDER COMPANY et al., Defendants and Respondents.

[Civ. No. 10947.   Third Dist.   Sept. 8, 1965.]

VICTORIA ARNOLD, Plaintiff and Appellant, v. HER-CULES POWDER COMPANY et al., Defendants and Respondents.

(Consolidated Appeals.)

46

Goldstein, Barceloux & Goldstein, P. M. Barceloux, Burton J. Goldstein and Albert E. Levy for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, John B. Bates, Noble K. Gregory, Knox, Goforth & Ricksen, Ricksen, Snook & Vendt, John C. Ricksen and W. Sayer Snook, Jr., for Defendants and Respondents.

PIERCE, J.—Appeals from summary judgments in favor of defendants Hercules Powder Company (Hercules) and Coast Manufacturing and Supply Company (Coast Manufacturing) in five separate actions have been consolidated by stipulation. All five actions involve the same accident, a dynamite explosion in an exploration tunnel at the Oroville

dam site. Plaintiff are persons injured and the representatives of persons killed by said explosion. The pleadings and affidavits in the five actions are identical in all respects material here.

In this opinion we sustain plaintiffs' contentions (1) that a triable issue of fact has been raised against both defendants Hercules and Coast Manufacturing, and (2) that the cause of action stated against Coast Manufacturing is not barred by the operation of the statute of limitations. (Code Civ. Proc., § 340, subd. 3.)

The amended complaint pleads three causes of action, the first against the State of California and Does I through X, the second cause of action against all other defendants (which would include Hercules); a third cause of action was pleaded which is not involved here.[1]

1. *Re the Summary Judgment in Favor of Hercules.*

In the second cause of action pleaded against Hercules it is alleged that on April 21, 1959, the plaintiff was injured (or that plaintiffs' decedents were killed) by an explosion of dynamite while he was working in the tunnel described above. It is also alleged that Hercules (and other defendants, including a defendant named "Coast Equipment Company") "manufactured, sold or supplied the fuse and other supplies used in the blasting and, among other negligence, *negligently* sold or supplied the fuse without reasonably adequate warning as to the timing of the fuse." (Italics supplied.) It is also alleged: "The aforesaid explosion was proximately caused by the aforesaid negligence of the defendants."

The answer of Hercules denies these allegations.

The briefs of both sides assert facts which, although not pleaded in the second cause of action—except by reference—are conceded and need statement to give clarity to the discussion to follow. Boyles Bros. Drilling Company (not a party to the action but perhaps the employer of the injured or stricken workmen—see discussion below) had contracted with the State of California to excavate the tunnel in question. Boyles had purchased its dynamite, fuse and other

---

[1] A demurrer of the State of California was sustained to the first cause of action and judgment was entered in its favor. That judgment was reversed on appeal in *Good v. State of California* (1962) 57 Cal.2d 512 [20 Cal.Rptr. 637, 370 P.2d 341]. A demurrer to the third cause of action charging Hercules and others with a breach of warranty was also sustained. Since stipulation had been made that there would be no request to amend, the order sustaining the demurrer was without leave to amend. Appellants do not challenge the ruling.

blasting supplies from defendant Supply Company which in turn placed an order therefor with Hercules.

The declaration of Hercules' regional sales manager accompanying its motion for summary judgment supplies additional facts, to wit: that Hercules does not manufacture fuse. It does, however, take orders for fuse along with orders for dynamite and other blasting supplies (which Hercules does manufacture). In this instance, when the "jobber" (defendant Dynamite Supply Company) had placed its order with Hercules for dynamite, fuse and blasting supplies, the order for fuse was passed on to, and filled by, a manufacturer defendant Coast Manufacturing which shipped directly to the jobber. Hercules never had possession of the fuse. It did, however, "subsequently . . . bill the customer and pay the manufacturer's invoice."

The declaration further states that "With rare exceptions, dynamite fuse is manufactured to burn at a rate of one foot to approximately 40 seconds," and that a type "Black Sequoia," a length of "which was returned to Hercules Powder Company from the job where the accident occurred after the explosion is so manufactured"; that certain fuse "which burns at a faster rate is manufactured for special applications but I know of none which burns at a slower rate. . . ."

The fact that dynamite fuse usually burns at a rate of approximately one foot in 40 seconds is stated to be a matter of general knowledge among those selling and using blasting materials but such rate is customarily not marked on the fuse or its container "because the manufacturer and seller makes no representation concerning it. The user therefore is not in a position to rely on any representation or statement as to the burning rate, but is required to make his own tests."

Hercules, in addition to this declaration, asked the trial court, and asks us, to take judicial notice of the fact that a safety order of the Division of Industrial Safety of the California Department of Industrial Relations requires that "The average burning rate of safety fuse used in a tunnel shall be determined by burning not less than three three-foot (3') lengths of such fuse in open air." (Cal. Admin. Code, tit. 8, § 8474, subd. (a).)

Plaintiffs' counteraffidavit of L. O. Chapman denies none of the factual statements of the declaration filed on behalf of Hercules and confirms several of them, including the fact that Hercules itself does not manufacture dynamite fuse. The

counteraffidavit also avers that fuse is sold in reels of 3,000 feet, in plain wrappers without warning as to fuse-timing on either the fuse or the package.

This is the factual background upon the basis of which we attack the problem of the applicability of the summary judgment statute. (Code Civ. Proc., § 437c.) That section provides (*inter alia*) that where a claim is made by a defendant that the action has no merit the issue of whether or not there is "a triable issue of fact" may be tested on motion by affidavits. The affidavits in support of the motion "*must contain facts* sufficient to entitle . . . defendant to a judgment in the action" and the affidavits in opposition to the motion "*shall set forth facts*" showing (*if the opposing party be the plaintiff*) that the party has "*a good cause of action* . . . upon the merits." (Italics supplied.)

In *Walsh* v. *Walsh* (1941) 18 Cal.2d 439, on page 442 [116 P.2d 62], our Supreme Court made it clear that the "expedited procedure" of summary judgment is permitted "only where it is *perfectly plain* that there is no substantial issue to be tried." (Italics supplied.) This court in *Garlock* v. *Cole* (1962) 199 Cal.App.2d 11, 14 [18 Cal.Rptr. 393], applied the rule of the *Walsh* case, *supra*, and held that "*Ascertainment* of triable issues, not *determination* thereof fixes the judicial function" in summary judgment proceedings. In the leading case of *Eagle Oil & Ref. Co.* v. *Prentice*, 19 Cal.2d 553 [122 P.2d 264], the court observed on page 556 that summary judgment "procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact." It added that the affidavits of the moving party must be "strictly construed." In *de Echeguren* v. *de Echeguren*, 210 Cal.App.2d 141, the court says on page 146 [26 Cal.Rptr. 562], "If, after an examination of the affidavits, doubt exists as to whether summary judgment should be granted, such doubt should be resolved against the moving party. [Citations.] But, on the other hand, . . . 'a summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact. [Citation.]'" This court recently applied the "on the other hand" portion of the foregoing rule in *Aguirre* v. *Southern Pac. Co.* (1965) 232 Cal.App.2d 636, 641 [43 Cal. Rptr. 73].

While the language of section 437c quoted above su-

perficially might seem to cast correlative burdens upon both parties, there is no obligation on the opposing party (plaintiffs here) to establish anything by affidavit unless and until the moving party (defendant here) has by affidavit stated " 'facts establishing *every element* necessary to sustain a judgment in his favor.' " (*de Echeguren* v. *de Echeguren, supra,* 210 Cal.App.2d 141, 147; italics supplied.) That means a defendant must show clearly that plaintiff's "action has no merit." Summary judgments cannot be granted "by default" (*de Echeguren* v. *de Echeguren, supra,* at page 148). ■ Thus a plaintiff who has pleaded a cause of action on either of two theories will not be subject to defeat by summary judgment because the defendant has established by an uncontradicted affidavit that *one* of the two theories (but not necessarily the other) cannot be established. The burden is upon defendant to rule out *all possible merit* and, as shown above, the law is exacting in its requirements upon a defendant who seeks to meet that burden.

■ In essence all that Hercules has shown here is (1) that it does not manufacture fuse, (2) that the fuse used here was never in its possession, (3) that most fuse burns at the rate of one foot in 40 seconds but some fuse burns faster, (4) that "Black Sequoia" fuse (which may or may not have been the type of fuse involved here) is manufactured to burn at the rate of one foot in 40 seconds, (5) that it is generally known by sellers and users that manufacturers "customarily" do not mark fuse sold or its containers with a time warning, (6) that a state safety order requires that the ultimate user must test all fuse used in tunnels. (Another averment that the absence of a time warning cannot be relied upon "because the manufacturer and seller makes no representation concerning it" is under the circumstances here merely a conclusion.)

Do the facts shown negate any possible proof of a cause of action against Hercules from which this fuse was ordered and which caused it to be delivered? We cannot so hold.

The facts pleaded in the second count of the complaint, as we have paraphrased them above, are sufficient (although by no means a model of pleading) to state a cause of action under the rule of "strict liability in torts" or as it is sometimes called "liability without negligence." Although it is alleged that the defendants' acts were "negligently" done, that word for purposes of strict liability is surplusage. This is a principle sometimes applied in "products" cases. The

bellwether California case in this field is *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897]. It held (on p. 62): ". . . A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." The opinion of the court (per Justice Traynor) points out (on p. 63) that "the recognition that the liability is not assumed by agreement but imposed by law [citations], and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products [citations] make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort." And the reason for the rule of strict liability in such cases is expressed in *Greenman, supra* (at p. 63) as follows: ". . . The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." This decision swept away the rule, or the remnant thereof, that a plaintiff injured by a defective product must sue under a contract of warranty and establish a privity between himself and the defendant.

The rule in *Greenman, supra,* was extended in *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168], also a products liability case, but one in which both the manufacturer *and the dealer* were held to strict liability. In so holding our Supreme Court (again per Justice Traynor) stated (on p. 262): "Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. [Citation.] In some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end: the retailer's strict liability thus serves as an added incentive for safety. Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff *and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship.*" (Italics supplied.)

Hercules differentiates the *Greenman* and *Vandermark* cases from this one: First Hercules was neither a manufacturer nor a retailer; it was a wholesaler. Secondly, it contends, the uncontradicted facts show that the product was not sold here with the expectation that it would be used without inspection for defects or the limitations upon its functions. On the contrary, it was required by law that the product be tested by the ultimate user before using.

As regards the first point, 2 Restatement Second of Torts (long awaited, and as this opinion is written just off the press) chapter 14, deals with the liability of persons supplying chattels (pp. 299 et seq.). Hercules relies upon section 402 (also in the original Restatement) stating that a seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by its dangerous character because of his failure to discover the danger. That section, as we see it, can have no applicability here. Rather in point is new section 402 A which states (*op. cit.* pp. 347, 348) that one who sells any product in a defective condition unreasonably dangerous to the user or consumer is subject to liability for physical harm thereby caused to the ultimate user or consumer if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. Liability is said to exist notwithstanding that ''the seller has exercised all possible care in the preparation and sale of his product.'' Thus this section recognizes a rule of ''strict liability'' where the conditions specified exist.

In ''Comment f'' (*op. cit.* p. 350) the rule stated is said to apply to ''any person engaged in the business of selling,'' and therefore applies not only to manufacturers but ''to any wholesale or retail dealer or distributor.'' Thus, with the operations of Hercules described, it should undoubtedly be included within the rule. The fact that it chooses to delegate the manufacture of fuse to another and that it causes the manufacturer to ship the product directly to the consumer cannot be an escape hatch to avoid liability.

Nor is Hercules an ''occasional'' seller. (See *op. cit.*, Comment f, p. 350.) It is common, if not judicial, knowledge that Hercules is one of the large nationwide sellers of dynamite and blasting supplies.

''Comment g'' of the Restatement (*op. cit.* p. 351) points

out that the rule applies only where the product is defective, but the word "defective" is given a somewhat broad definition. The comment says: "The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, *in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.*" (Italics supplied.) In "Comment j" it is declared: "In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use." (*Op. cit.* p. 353.) Illustrations are given—it is said that a seller may assume that those with allergies to strawberries or eggs will be aware of them, obviating any obligation to warn, but that a seller will be required to warn if the product contains an ingredient to which a substantial number of the population are allergic and the ingredient is one whose danger is not known, or if known, is one which the consumer would reasonably not expect to find in the product. "Comment k" (*op. cit.* p. 353) refers to "unavoidably unsafe products" where it is pointed out proper direction and warning should always be given, and if so given the product is not to be regarded as defective or unreasonably dangerous.

We think it is a fair summarization of the foregoing comments to say that it is the opinion of the Law Institute that a product, although faultlessly made, may nevertheless be deemed "defective" under the rule and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given.

In "Comment l" (*op. cit.* p. 355) it is said: "In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller, although the rule applies equally if he does so. He may have acquired it through one or more intermediate dealers."

Appended to section 402 A of the Restatement Second (on p. 348) is the "Caveat": "The Institute expresses no opinion as to whether the rules stated in this Section may not apply (1) to harm to persons other than users or consumers. . . ." In "Comment o" on "Caveat" it is said (*op. cit.* p. 356) that thus far the courts have not applied the rule stated to persons other than to users and consumers. It says, however: "There may be no essential reason why such plaintiffs should not be brought within the scope of the protection

afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product; but the social pressure which has been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers. The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by such persons.'' As will be noted below it is not necessary to decision in this case that we attempt so to expand the rule and we do not do so.

In *Vallis* v. *Canada Dry Ginger Ale, Inc.* (1961) 190 Cal. App.2d 35 [11 Cal.Rptr. 823], which was a food products liability case (but in which the complaint was framed upon the theory of a breach of implied warranty) it was held that liability extended to protect *employees* of the ultimate user. The court stated (on p. 44): ''. . . It is obvious that its handling by an employe of the immediate vendee in the normal course of his work, with consequent exposure to danger, is to be expected.'' The court referred to *Peterson* v. *Lamb Rubber Co.*, 54 Cal.2d 339 [5 Cal.Rptr. 863, 353 P.2d 575], where the Supreme Court had said in a case involving the liability of a manufacturer for breach of implied warranty of fitness to an employee (on p. 347) that ''in view of modern industrial usage employes should be considered a member of the industrial 'family' of the employer. . . .'' The rule stated is also the rule of the new Restatement. (See *op. cit.*, Comment *l*, p. 354.)

(There is no allegation in the complaints of the cases at bench that plaintiffs, or plaintiffs' decedents, as the case may be, were employees of Boyles Bros. Drilling Co., the ultimate user. It would seem likely that they were. Although on appeal we cannot infer this, our decision to reverse the summary judgment does not depend upon this fact. Before trial plaintiffs should be allowed permission to allege the master-servant relationship as a fact, if it is a fact.)

    The second contention of Hercules is, as stated above, that this is not a case where the rule of strict liability can be applied because (1) it is *generally* known to users and to sellers alike that dynamite fuse, which is *usually* manufactured to burn at the rate of one foot in 40 seconds, is not marked to show, either on the fuse itself or on its package, what the actual timing is, and (2) a state safety order requires that fuse to be used in tunnels be tested. We have stated above that summary judgment proceedings are to be

tested by ascertainment of triable issues not the determination thereof. (*Garlock* v. *Cole, supra,* 199 Cal.App.2d 11.) In this case it is not incontrovertibly shown that the particular fuse used *was* manufactured to burn at the rate of one foot in 40 seconds or, if it was supposed to, that it met this specification. It was not incontrovertibly shown that this ultimate consumer, Boyles, was aware of the fact that manufacturers do not customarily give warning of the burning time of fuse. The facts alleged do not even rule out that the fuse purchased and used here was not of that rare type which burned faster, and we are not informed of the custom of manufacturers as to such fuse. That custom, in any event, would not necessarily establish a standard of care meeting the test of reasonability to be applied when the case is tried. The existence of the state safety order may be evidence that it was reasonable for suppliers of fuse in some instances not to warn regarding fuse timing. It is not, however, conclusive.

Nothing herein contained is intended to infer that a duty existed to warn of the burning time of the fuse actually used in this case or that this is a "strict liability" case. Nor do we assert that when the facts are fully revealed, it will necessarily be a jury question to determine whether or not defendants should be held to strict liability. ■ On the contrary, aside from questions of foreseeability, existence of a duty is generally a question of law to be determined by the court and not the jury. (*Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 307, 308 [29 Cal.Rptr. 33, 379 P.2d 513].) ■ We do not hold as a matter of law the supplier of dynamite fuse has a duty to furnish a warning on the subject of burning time. Rather our view is that the meager information presented by the summary judgment affidavits was an inadequate basis for determination that no duty to warn existed.

■ Hereinabove we have treated this as a case either of strict liability or no liability. It cannot be overlooked, however, that negligence has also been pleaded. True, it was pleaded in general terms but that is permissible. (2 Witkin, Cal. Procedure (1954) p. 1262, and cases cited.) As that author states (*op. cit.* p. 1264): "[T]he negligence rule is supported on grounds of convenience and fairness: The plaintiff usually does not know the details and the defendant usually does." (See *Rannard* v. *Lockheed Aircraft Corp.* (1945) 26 Cal.2d 149 [157 P.2d 1].) The justice of the rule

is, perhaps, well illustrated by the meager quantum of facts disclosed by the record in these cases as they now stand. Several men are dead and others were injured as the result of a dynamite explosion in a tunnel. How the accident happened and who was responsible may never be known, and plaintiffs may never be able to prove either negligence or a case within the doctrine of "strict liability." They should have the opportunity to do so. As the cases now stand they have been denied even the opportunity of discovery, such procedures having been cut off in these summary proceedings.

Liability of suppliers of chattels does not rest solely upon strict liability. It may also rest upon negligence. (See, e.g., 2 Rest. 2d Torts, §§ 301-401.) As stated by Dean Prosser (Prosser on Torts, Hornbook Series, 3d ed. p. 648): "The seller's negligence may take a number of forms."

The author enumerates some of them and then states (on p. 649): "Most frequently, it [i.e., negligence] consists merely in failure to exercise reasonable care to inspect the goods to discover defects, *or in preparing them for sale.* When the action is one for negligence, it is of course agreed that the care required of the seller is only that of a reasonable man under the circumstances. . . . It can scarcely be denied that there is a duty to exercise reasonable care for the protection of the buyer. . . . This will be entirely a matter of the circumstances of the particular case." (Italics supplied.) Just as it is impossible for a court now to say on the record here that no possible case of "strict liability" exists, so also is it impossible to rule out negligence.

That which is stated above as to the invalidity of summary judgment in favor of Hercules, the wholesaler, holds true with equal weight against Coast Manufacturing, the manufacturer—unless, of course, the statute of limitations applies to bar the action against the latter.

2. *Re the Summary Judgment in Favor of Coast Manufacturing.*

In both the original and amended complaints there were named as defendant "Coast Equipment Company." The defendant so named was charged in the second count of said complaints as having manufactured or supplied the fuse used. The record shows that the actual manufacturer of the fuse was defendant Coast Manufacturing and Supply Company. In neither complaint was Coast Manufacturing identified by its true name. The pleader had mistakenly thought that the name of the manufacturer was "Coast Equipment

Company." When service was made a second mistake was made. The sheriff served Coast Manufacturing as "Doe I." The only charge against "Doe I" in either complaint was that he, she or it (along with other Does and the State of California) had been guilty of negligence in the management and control of the place where the accident happened. This was alleged in the first count of the complaint. Coast Manufacturing, however, in answering the original complaint did not just answer the allegations of the first count. It also answered the second count denying (on want of information and belief) the charge that "Coast Equipment" had been the manufacturer of the fuse and also denying the other charging allegations of that count.

Plaintiffs' mistakes were not brought to light until after the one-year statute of limitations had run. Coast Manufacturing then moved for a summary judgment upon the basis of an affidavit showing that it had had nothing to do with the management and control of the place where the accident had occurred. Plaintiffs countered with a motion to amend to show that "Coast Equipment Company" had mistakenly been named as a defendant when Coast Manufacturing was intended to be named and that the latter had been mistakenly served as "Doe I," it having been inadvertently overlooked that "Doe I" had not been charged in the second count of the complaint as a manufacturer or supplier of the fuse. The trial court denied the motion to amend and granted the motion for summary judgment.

We think that the court's order unnecessarily places form over substance.

Under the facts recited there can be no question that defendant Coast Manufacturing, knowing that it was the manufacturer of the fuse, also knew that the pleader was charging the manufacturer (whom he had misnamed "Coast Equipment Company") with negligence in failing to warn of the timing of the fuse.

It is well settled that a mere misnomer sought to be corrected after the statute of limitations has run will not bar the action. In 1 Chadbourn, Grossman & Van Alstyne, California Pleading, section 686, pages 570-571, it is stated: "It is perhaps inevitable that errors will occur in naming parties. Such mistakes usually are of little consequence, representing mere clerical errors which are amendable before judgment- . . . . Misnomers are simply errors in nomenclature." And these authors state (in § 688, p. 573): "It is settled in Cali-

fornia that a cause of action pleaded in a seasonably filed complaint is not barred by the statute of limitations merely because misnomer of the defendant is not corrected until after expiration of the statutory period." It is pointed out that difficulties arise when, as sometimes occurs, a plaintiff under the claim of a misnomer may try to substitute a new defendant. The text cites many cases (on pp. 570-575) citation of which need not be repeated here, and the conclusion is reached with which we agree: "Where full notice is given and a reasonably prudent person would realize that he is the party intended to be named as the defendant, the court will treat the mistake as harmless misnomer in order to promote substantive rights."

Here there was obviously no covert attempt by plaintiffs to substitute a new party for a party sued under the guise of a mistake of nomenclature. Plaintiffs merely thought that Coast Manufacturing was named "Coast Equipment Company." Here also Coast Manufacturing was neither prejudiced nor misled. It was given full notice that it was the party intended to be sued and the status in which it has been included as a defendant. True, misnomer was coupled with mistake in service. Although that additional mistake might under some circumstances raise a serious question, we cannot consider it significant here. Coast Manufacturing recognized its awareness that it was the party intended to be charged as a manufacturer by answering the second count. Its contention that it was answering as "Doe I" is a too-nice distinction. Its answer states that it had been "sued and served as Doe I" but it was answering as Coast Manufacturing and Supply Company, the manufacturer of fuse, when it answered the second count. "Doe I" had not been charged in that count.

Judgments in the five actions in favor of both defendants are reversed with directions to the court to permit plaintiffs to amend their complaints in the respects noted above.

Friedman, J., and Regan, J., concurred.