STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-08-343

COLONIAL SQUARE CONDOMINIUM
ASSOCIATES,

Plaintiff

v.

ORDER

PRIME CARE MEDICAL SUPPLIES, INC.
and EMPIRE COMFORT SYSTEMS, INC.,

Defendants

This case comes before the Court on Defendant Prime Care Medical Supplies' (herein Prime Care) motion to dismiss and Defendant Empire Comfort System's, Inc.'s (herein Empire) motion to amend.

BACKGROUND

Plaintiff Colonial Square Condominium Association (herein Colonial Square) is a Maine corporation with a principal place of business located at 952 Post Road in Wells, Maine. Complaint ¶ 1. Colonial Square owns certain real property, which consists of land and three buildings, located generally at 952 Post Road in Wells, Maine. Complaint ¶ 2. Defendants Prime Care, a Maine corporation with a principal place of business in Wells, Maine, sells and markets a variety of medical supplies. Complaint ¶¶ 3-4. Defendant Empire, an Illinois corporation with a principal place of business in Belleville, Illinois, is in the business of manufacturing, designing, and marketing a variety of space heating products. Complaint ¶¶ 5-6.

On or about December 24, 2004, Defendant Prime Care occupied condominium Units 10 and 11, located in one of the buildings owned by Colonial Square at 952 Post Road in Wells, Maine. Complaint ¶ 7. On or about this date, a fire started in Units 10 and 11, resulting in fire damages to those two specific units, but further, causing extensive damages to the entire building housing these two units. Complaint ¶ 8.

Colonial Square alleges that the fire started when combustible materials were placed in the vicinity of an Empire Wall Furnace that had been installed to heat the condominium units. Complaint ¶ 10. The furnace was designed, engineered, manufactured, and supplied by Empire. Complaint ¶ 11. However, Colonial alleges that there were no warning signs or labels attached to the furnace, nor were there any warnings or advisories in the owners' manuals and sales literature, cautioning against the placement of combustible materials on or near the furnace. Complaint ¶¶ 12-13.

On December 4, 2008, Colonial Square filed a complaint alleging (1) negligence against Prime Care, (2) strict liability against Empire, (3) negligence against Empire, and finally (4) breach of implied warranty against Empire. Both Empire and Prime Care deny the material allegations alleged in the complaint.

On January 21, 2009, Prime Care filed the present motion to dismiss. This case was originally filed sometime in 2005, but based on Colonial Squares' failure to comply with M.R. Civ. P. 16B (Alternative Dispute Resolution), the matter was dismissed without prejudice on November 29, 2006. However Prime Care asserts that this matter should now be dismissed based on (1) the lapse of time between the dismissal without prejudice and the filing of the present complaint, and (2) the fact that key evidence, namely the heater involved in the incident that gave rise to this suit, has since been destroyed by Colonial Squares.

2

Colonial Square opposes the motion to dismiss. In its opposition, Colonial Square alleges that, in fact, the heater has not been destroyed, but rather, has been preserved, safeguarded, and stored at the NEFCO Fire Investigation facility located in Somersworth, New Hampshire. Further, Colonial Square points out that, while it is alleged by Prime Care that it has been prejudiced because it had originally incurred significant costs preparing for the original case, the expenses incurred by Prime Care were minimal given that they did not take any discovery or designate experts before the original case was dismissed without prejudice.

## ANALYSIS

I.      Prime Care's Motion to Dismiss.

While it is true that "[s]ometimes even the inadvertent, albeit negligent, loss of evidence will justify dismissal because of the resulting unfairness: The expansion of sanctions for the inadvertent loss of evidence recognizes . . . the resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission." *Pearl Investments, LLC v. Standard I/O*, 257 F.Supp.2d 326, 348 (D. Me. 2003)(quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001)), here, there is record evidence, in the form of an affidavit of Attorney Jeffrey Edwards, showing that the heater has not been destroyed, but rather, has been placed in storage and is available for inspection by Prime Care.

While the re-filing of the complaint has caused added inconvenience and expense for Prime Care, this is insufficient to warrant the harsh sanction of dismissal.

II.     Empire's Motion for Leave to Amend Its Answers and Affirmative Defenses.

Colonial Square does not oppose the motion to amend answers filed by Empire.

3

## CONCLUSION

Defendant Prime Care's motion to dismiss is **DENIED**.

Defendant Empire's motion to amend is **GRANTED**.

Dated:        June 10, 2009

G. Arthur Brennan
Justice, Superior Court

Jeffrey T. Edwards, Esq. - PL
Gene R. Libby, Esq. - DEF. Prime Care Medical Supplies, Inc.
Stephen B. Wade, Esq. - DEF. Empire Comfort Systems, Inc.

STATE OF MAINE                                              SUPERIOR COURT
                                                              CIVIL ACTION
YORK, ss.                                          DOCKET NO. CV-08-343,
                                                   GAB - YOR - 10/22/2010


COLONIAL SQUARE CONDOMINIUM
ASSOCIATES,

                          Plaintiff


            v.                                            ORDER


PRIME CARE MEDICAL SUPPLIES, INC.

      and

EMPIRE COMFORT SYSTEMS, INC.,

                          Defendants


Plaintiff Colonial Square Condominium Associates brought this action against defendants Prime Care Medical Supplies and Empire Comfort Systems, Inc., after a fire broke out in Prime Care's warehouse and damaged Colonial's property. Defendant Prime Care moved for summary judgment, but has since reached a settlement agreement with Colonial. The plaintiff now moves to dismiss Prime Care. Defendant Empire moves for summary judgment, opposes Colonial's motion to dismiss Prime Care, and requests leave to file a cross-claim against Prime Care for contribution.

## BACKGROUND

Empire Comfort Systems, Inc., is an Illinois corporation that designs, manufactures, and markets wall furnaces. (Supp. S.M.F. ¶ 5.) Colonial Square Condominium Associates owns land and three buildings in Wells, Maine. (Supp. S.M.F. ¶ 1.) Defendant Prime Care Medical Supplies, Inc., is in the business of marketing, selling, and leasing a variety of medical equipment and supplies. (Supp. S.M.F. ¶ 18.)

On December 24, 2004, defendant Prime Care Medical Supplies, Inc., was renting and occupying condominium units 10 and 11 in Colonial's building number 2. (Supp. S.M.F. ¶ 3.)

Before Prime Care moved in, a DV-35-25G wall furnace manufactured by Empire had been installed in unit 11. (Supp. S.M.F. ¶ 7.) The installation instructions, spec sheets, and owner's manual for this furnace specify that nothing should be placed on top of it, within 48 inches above it, or within 6 inches of its sides. (Supp. S.M.F. ¶ 8.) The installation instructions and owner's manual have the following printed on their front page:

> WARNING: If the information in these instructions are not followed exactly, a fire or explosion may result causing property damage, personal injury or loss of life.

(Supp. S.M.F. ¶ 11.) The instructions and manual also warn that:

> Due to high temperatures the appliance should be located out of traffic and away from furniture and draperies. . . . Children and adults should be alerted to the hazards of high surface temperatures and should stay away to avoid burns or clothing ignition. . . . Clothing or other flammable material should not be placed on or near the appliance. . . . DO keep the appliance area clear and free from combustible material . . . .

(Supp. S.M.F. ¶ 11.) Finally, the DV-35-25G wall furnace bears a warning label that reads:

> CAUTION: HOT WHILE IN OPERATION. DO NOT TOUCH. KEEP CHILDREN, CLOTHING, FURNITURE, GASOLINE, AND OTHER LIQUIDS HAVING FLAMMABLE VAPORS AWAY.

(Supp. S.M.F. ¶ 12.)

Empire's expert witness, Mr. Geoffrey Peckham, testified that these warnings meet industry standards. (Supp. S.M.F. ¶ 15.) Generally, every DV-35-25 furnace leaves Empire's factory accompanied by installation instructions and an owner's manual, and the warning label is affixed before the time of the initial sale. (Supp. S.M.F. ¶¶ 10–12.)

Empire could not say whether the specific furnace in unit 11 bore the warning label and was accompanied by instructions, and Prime Care's employees did not recall whether it did or did not have those warning materials. (Opp. S.M.F. ¶ 12.)

In December 2004, defendant Prime Care was using unit 11 as a warehouse to store its inventory of medical equipment and supplies. (Supp. S.M.F. ¶¶ 19–20.) Prime Care's general manager warned each of Prime Care's employees to be careful not to touch the wall furnace and to keep inventory and other items away from the wall furnace. (Supp. S.M.F. ¶ 23.) The employees knew they should keep flammable items away from the furnace. (Supp. S.M.F. ¶ 24.) The landlord at unit 11 knew that combustibles should not be kept close to the furnace and did not think it was necessary to tell Prime Care not to stack combustible items near the heater. (Supp. S.M.F. ¶ 25.)

One of the items Prime Care sells is a disposable mattress pad known as an "underpad." (Supp. S.M.F. ¶ 21.) Underpads are bundled and sold in cardboard boxes containing 60 pads each. (Supp. S.M.F. ¶ 22.) These boxes were typically stored on shelves approximately 10 feet from the furnace. (Supp. S.M.F. ¶¶ 27–28.) Boxes would also be stacked on the floor, four or five feet high, next to the shelving and approximately 2 to 3 feet from the furnace. (Supp. S.M.F. ¶ 29.) However, there were times when the warehouse would overflow with supplies and employees would run out of space. (Supp. S.M.F. ¶ 30.) In the week leading up to the fire, boxes of underpads were scattered throughout the warehouse, wherever there was space. (Supp. S.M.F. ¶ 31.) One day before the fire, a Prime Care employee noticed a box on the floor that appeared to have fallen from the shelves. (Supp. S.M.F. ¶ 32.) He picked the box up and placed it on a bench in front of the shelving. (Supp. S.M.F. ¶ 33.)

On December 24, 2004, a fire occurred at Prime Care's premises. (Supp. S.M.F. ¶¶ 34–35; Opp. S.M.F. ¶ 34.) Micheal Keely, a Senior Investigator for the Maine State

Fire Marshall's Office, determined that the fire originated in the warehouse storage area of unit 11. (Supp. S.M.F. ¶ 34.) He observed numerous boxes and a large number of the underpads in various states of char on the top of the wall heater and to its sides, blocking the vents on the top and front of the furnace. (Supp. S.M.F. ¶ 36.) Peter Holmes, a State of Maine LP Gas Inspector, also investigated the scene and witnessed combustible material piled on top of and on the sides of the wall heater. (Supp. S.M.F. ¶¶ 37, 39.) Inspector Holmes concluded that the fire was caused by the storage of combustibles too close to the furnace's heat vents. (Supp. S.M.F. ¶ 40.) Investigator Keeley similarly concluded that the fire was caused by the placement of underpads on top of and on the sides of the furnace.[1] (Supp. S.M.F. ¶ 41.)

Colonial filed its initial complaint against Prime Care and Empire on December 4, 2008. The complaint accused both Prime Care and Empire of negligence, and also alleged that Empire was strictly liable for breaching an implied warranty and failing to adequately warn of the dangers associated with its furnace. Empire moved for summary judgment on April 20, 2010, and Prime Care moved for summary judgment on April 28, 2010. Prime Care and Colonial have since reached a settlement, and Colonial moved to dismiss Prime Care on June 18, 2010. Empire opposes this motion to dismiss, and requested leave to file a cross-claim against Prime Care on June 24, 2010.

## DISCUSSION

1.      Colonial's Motion to Dismiss & Empire's Motion to File a Cross-Claim

Empire argues that the dismissal of Prime Care from this action will impinge upon its right to due process by depriving it of the benefit of Prime Care's participation as codefendant and jeopardizing Empire's ability to seek an allocation of fault. Colonial

---

[1]      The investigation determined that the furnace had not malfunctioned or ignited a gas leak, and the plaintiff does not allege that the furnace was mechanically defective.

4

has responded to Empire's concerns by agreeing that Empire has the right to seek an allocation of fault or take a setoff for the full amount of the settlement, and agreeing to stipulate that Empire's liability is limited to the percentage of fault allocated to it.

Traditionally, Maine "held that contribution 'is an equitable right founded on acknowledged principles of natural justice and enforceable in a court of law.'" *Petit v. Key Bancshares of Me., Inc.*, 614 A.2d 946, 947 (Me. 1992) (quoting *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 996 (Me. 1983)). One codefendant could not enter a settlement that would extinguish another's right to seek contribution without that other, nonsettling defendant's permission. *Id.* at 948; *Lavoie v. Celotex Corp.*, 505 A.2d 481, 483 (Me. 1986) This meant that a defendant in Empire's position maintained the right to initiate a cross-claim against a codefendant like Prime Care and jeopardize the finality of any settlement Prime Care reached with Colonial.

In 1999 the Legislature amended Maine's comparative negligence statute to expressly allow so-called *Pierringer* release and dismissal procedures in multiparty litigation. P.L. 1999, ch. 633, § 1; L.D. 1795, Summary (119th Legis. 1999). Under the current statute:

> If a defendant is released by the plaintiff under an agreement that precludes the plaintiff from collecting against remaining parties that portion of any damages attributable to the released defendant's share of responsibility, then . . . the released defendant is entitled to be dismissed with prejudice from the case. The dismissal bars all related claims for contribution assertable by remaining parties against the released defendant. . . . The trial court must preserve for the remaining parties a fair opportunity to adjudicate the liability of the released and dismissed defendant. Remaining parties may conduct discovery against a released and dismissed defendant and invoke evidentiary rules at trial as if the released and dismissed defendant were still a party.

14 M.R.S. § 156 (2009).

Following Colonial's stipulated agreement to release Empire from any portion of liability attributable to Prime Care, the settlement between Colonial and Prime Care fits

5

within the statutory rubric. Prime Care is entitled to be dismissed from the case with prejudice and immunized against Empire's cross-claim for contribution. Empire has not shown that Prime Care's absence will cause it any particular, unforeseeable prejudice that would make it impossible to fairly adjudicate the liability of both defendants. Empire does have "the right through the use of special interrogatories to request" that the jury allocate the percentage of fault between itself and Prime Care, or, if no such finding is made, to have its liability reduced by the amount of the settlement. 14 M.R.S.A. §§ 156, 163 (2009).

The court grants Colonial's motion to dismiss Prime Care, taking care to specify that Colonial has waived its right to hold Empire jointly liable for any portion of damages attributable to Prime Care. This renders Prime Care's motion for summary judgment moot.

2.      Empire's Motion for Summary Judgment

Colonial alleges that Empire's heater was defective due to inadequate warnings of the risks it posed. This alleged failure to warn is the basis for Colonial's claims of negligence, strict liability pursuant to 14 M.R.S.A. § 221, and breach of implied warranty pursuant to 11 M.R.S.A. § 2-314. Empire contends that it had no duty to warn against the risk of fire because the danger was open and obvious, that the warnings it did provide were adequate as a matter of law, and that Colonial has not shown that any alleged defect proximately caused the fire of December 24, 2004.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d

6

745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179). Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)).

"[A] manufacturer has a responsibility to inform users and consumers of dangers about which he either knows or should know at the time the product is sold." *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197 (Me. 1990) (quoting *Canifax v. Hercules Powder Co.*, 237 Cal.App. 2d 44, 53, 46 Cal.Rptr. 552, 558 (1965)) (quotations omitted) (explaining 14 M.R.S.A. § 221). "A products liability action for failure to warn requires a three-part analysis: (1) whether the defendant had a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury." *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) (citing *McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 641 (D.C. Cir. 1988)). The action can sound in strict liability or negligence, and the analysis "is basically the same" in each. *Id.*

Empire first argues that it had no duty to warn against a fire because that is an obvious danger associated with a heater. "A manufacturer has no duty to warn of a danger that is obvious and apparent." *Lorfano*, 569 A.2d at 197. Whether a danger is "obvious and apparent" is a question of fact. *See Hatch v. Maine Tank Co.*, 666 A.2d 90, 94 (Me. 1995). Giving the plaintiff the benefit of all reasonable inferences, an ordinary reasonable person might not apprehend that the surface of the DV-35-25G wall furnace could become hot enough to ignite cardboard, or that blocking its vents might cause a conflagration. The question is close enough that the court cannot rule that the danger was obvious as a matter of law.

7

Empire's second argument is that the warnings it provided were adequate as a matter of law. Assuming "a duty to warn exists, the warning must advise the user of the risks associated with its product and offer the user specific directions for the product's safe use." *Pottle*, 628 A.2d at 675 (citing *McNeal*, 836 F.2d at 643). Colonial has not met its burden of showing that Empire's warning materials did not accompany the subject wall furnace at the time of its initial sale, so the question is whether those materials are sufficient to advise the ordinary user of attendant risks and provide specific directions for safe use. *Id.* "The degree of specificity required is a function of the potential magnitude of the harm and the likelihood of its occurrence. Given the fact-specific nature of the inquiry, a determination of the adequacy of a warning . . . is normally one for the jury." *McNeal*, 836 F.2d at 643 (citing *Russell v. G.A.F. Corp.*, 422 A.2d 989, 992 (D.C. 1980) (per curiam); *Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1086–87, 1087 n.4 (D.C. 1976)) (citations omitted).

Colonial seizes on two items in the record to argue that the supplied warnings could have been inadequate. First, Empire's representative testified that he would "unofficially" advise users to keep combustible materials 3 feet away from the DV-35-25G wall furnace. (Add'l S.M.F. ¶ 18; Davis Depo. at 84.) The manual accompanying the DV-35-25G unit specifies clearances of 4 feet above the furnace and 6 inches around its sides. (Supp. S.M.F. ¶ 8.) Second, the manual does not specify a clearance for the front of the furnace even though it is dangerous to have combustible items in contact with it or to block the vent at that location. (Add'l S.M.F. ¶¶ 13, 16.) Empire defends its warnings and clearance specifications as being compliant with ANSI industry standards.

The facts present a close case. Empire's warnings do specify how far combustible items should be kept from the heater, and Colonial has not shown that the distances in

the manual are unsafe. While no distance is specified for the furnace's front, there are general warnings about contact that encompass the front and it is not clear that the fire was caused by the placement of boxes in front of the furnace as opposed to its top and sides. On the other hand, a jury might be able to conclude that the manual does not adequately advise a user that failing to comply with the specified clearances might cause materials to ignite. While the warnings do generally advise a user to keep the vents clear and avoid contact with the furnace to prevent a fire, they may not sufficiently advise users of how near to the furnace combustible materials may safely be stored. Ultimately this is a question of fact that should not be resolved through summary judgment.

Finally, Empire argues that there is no indication that the alleged deficiencies in its warning proximately caused the fire at Prime Care's premises. A negligent act proximately causes harm if it was (a) "a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." *Wing v. Morse*, 300 A.2d 491, 495–96 (Me. 1973). Proximate causation presents a question of fact that should generally be decided by a jury. *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. However,

> [a] defendant is entitled to a summary judgment if there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff. The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the possibilities are evenly balanced, a defendant is entitled to a judgment.

*Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 12, 969 A.2d 935, 939 (quoting *Houde*, ¶ 11, 787 A.2d at 759).

The record shows that warning materials regularly accompany all of Empire's furnaces, and Colonial has not shown that the subject furnace lacked those materials

9

when it left Empire's hands. The warnings in question advise users that blocking the furnace's vents or placing combustible materials near the unit could result in a fire. Prime Care's employees knew that they should keep flammable materials away from the furnace. Nonetheless, the record indicates that Prime Care's employees placed cardboard boxes on top of and adjacent to the furnace, causing the fire in question.

Colonial argues that these facts demonstrate the inadequacy of the warnings because Prime Care's employees knew they shouldn't place flammable items near the heater but nonetheless did so. They argue that a better warning would have prevented them from doing something they already knew they shouldn't do. However, Colonial does not cite to any testimony or evidence indicating that Prime Care's employees would have behaved differently if they'd seen a more strident warning.

The furnace was presumably accompanied by warnings when Empire sold it; Prime Care's employees knew they should keep combustible materials away from the furnace; the employees placed cardboard on and around the furnace despite this knowledge; and none of them testified they would have behaved differently if they'd received a different warning. Given that Prime Care's employees disregarded both the warnings that accompanied the furnace at sale and their own knowledge of the danger, a jury would have to speculate that the alleged inadequacy of the warnings caused them to stack flammable material on top of the heating unit, or that additional warnings would have prevented them from doing so. In other words, Colonial has not shown a causal connection between Empire's alleged inadequacies and the behavior that caused the fire. It speculates that a better warning may have altered the behavior of Prime Care's employees, but there is no evidentiary support for this supposition.

Empire also requests summary judgment on count IV, breach of implied warranty under 11 M.R.S.A. § 2-314. "The implied warranty of merchantability requires

10

that a product be 'fit for the ordinary purposes' for which such [products] are purchased.'" *Lorfano*, 569 A.2d at 197 (quoting White & Summers, *Uniform Commercial Code* § 9-7 at 349 (1980)). To prevail, Colonial "must show that the [furnace] 'because of defects either did not work properly or [was] unexpectedly harmful.'" *Id.* (quoting White & Summers at 349). Colonial has not articulated how Empire's furnace breached the implied warranty, and has not attempted to defend this claim against Empire's motion for summary judgment. Presumably, Colonial believes that the furnace was "unexpectedly harmful" due to the lack of adequate warnings against fire.

The record shows that the furnace functioned properly to heat Prime Care's warehouse. The furnace was accompanied by instructions and warnings against the risk of fire when it left Empire's hands. There is no evidence that the furnace did not work properly or was unexpectedly harmful, and the court Grants Empire's motion for summary judgment on count IV.

## CONCLUSION

The court Grants Empire's motion for summary judgment on all counts because Colonial has failed to introduce evidence that the alleged defects proximately caused the fire at Prime Care's premises. The court Grants Colonial's motion to dismiss Prime Care, explicitly stating that Colonial may not pursue Empire for any portion of damages allocated to Prime Care. Empire's motion to file a cross-claim is moot.

Dated:　　October 22, 2010

_____
G. Arthur Brennan
Justice, Superior Court

11

ATTORNEY FOR PLAINTIFF:
JEFFREY EDWARDS, ESQ.
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME   04112-9546

ATTORNEY FOR DEFENDANT PRIME CARE MEDICAL SUPPLIES INC:
MARK FRANCO, ESQ.
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME   04112-4630

ATTORNEY FOR DEFENDANT EMPIRE COMFORT SYSTEMS INC:
JAMES E BELLEAU, ESQ.
STEPHEN WADE, ESQ.
SKELTON TAINTOR & ABBOTT
PO BOX 3200
AUBURN ME   04212-3200